SEAN H. LANE, UNITED STATES BANKRUPTCY JUDGE
Before the Court is the motion (the "Motion") [ECF No. 232] of Antonio Reinaldo Rabelo Filho, the foreign representative for the debtors in the above-captioned Chapter 15 cases (collectively, the "Chapter 15 Debtors"), requesting that this Court give full force and effect and grant comity in the United States to the foreign restructuring plan (the "Brazilian RJ
*256 Plan") confirmed in their Brazilian judicial reorganization (the "Brazilian RJ Proceeding") pending before the Seventh Business Court of Rio de Janeiro (the "Brazilian RJ Court") and also seeking related relief pursuant to Sections 105(a), 1145, 1507(a), 1521 and 1525(a) of the Bankruptcy Code. The Chapter 15 Debtors include Oi S.A. ("Oi"), Telemar Norte Leste S.A. ("Telemar"), Oi Brasil Holdings Coöperatief U.A. ("Coop"), and Oi Móvel S.A. ("Móvel"). Three affiliates of Oi-Portugal Telecom International Finance B.V. ("PTIF"), Copart 4 Participações S.A. ("Copart 4"), and Copart 5 Participações S.A. ("Copart 5")-are also debtors in the Brazilian RJ Proceeding, but are not debtors in these Chapter 15 proceedings. These three affiliates, together with the Chapter 15 Debtors, are referred to collectively as the "Brazilian RJ Debtors." The Brazilian RJ Debtors and their non-debtor affiliates are referred to collectively as the "Oi Group."
Several parties have interposed objections to the language of the proposed order submitted by the Chapter 15 Debtors on the Motion, but these objections have since been resolved. That leaves only one objection to the Motion-an objection (the "Objection") [ECF No. 245] filed by Pharol, SGPS S.A. ("Pharol"), Bratel B.V. and Bratel S.À.R.L. ("Bratel," and, together with Pharol and Bratel B.V., the "Pharol Parties"), who are direct and indirect shareholders of Debtor Oi. Numerous other parties with an economic stake in the Brazilian RJ Proceedings have submitted statements in support of the Motion, including the Steering Committee for an Ad Hoc Group of Bondholders of Oi (the "Steering Committee"), the International Bondholder Committee (the "IBC"), and noteholder Solus Alternative Asset Management. One party, Jasper R. Berkenbosch, who is the insolvency trustee appointed in the Dutch insolvency proceeding of Chapter 15 Debtor Coop, has reserved his right to interpose an objection based on whether the plan proposed by Coop in those Dutch proceedings receives approval from creditors and the Dutch courts.
Nowhere in the Objection do the Pharol Parties ask this Court to rule on any of the legal issues that are still pending in proceedings in Brazil, including the pending appeals of decisions of the Brazilian RJ Court or an arbitration and mediation associated with the Brazilian RJ Proceeding. But the Pharol Parties do request that this Court exercise its discretion to delay giving full force and effect and granting comity to the Brazilian RJ Plan until all the proceedings in Brazil have been resolved. For the reasons discussed below, however, the Objection is overruled and the Motion is granted.
BACKGROUND
A. The Oi Group and the Filing of the Brazilian RJ Proceeding
The Oi Group is among the world's largest integrated telecommunications service providers, with over 70 million customers. Declaration of Antonio Reinaldo Rabelo Filho in Support of the Motion for Order Granting Relief to (I) Enforce the Brazilian Reorganization Plan and (II) Grant Related Relief (the "Supporting Factual Declaration") [ECF No. 230] at ¶ 4. The Oi Group is also a critical source of telecommunications services in Brazil. Id. It is Brazil's largest fixed telephone service provider, with a market share of 34.5% of the total fixed-lines in service in the country. Id.
On June 20, 2016, the Brazilian RJ Debtors initiated the Brazilian RJ Proceeding through the filing of a joint voluntary bankruptcy petition in the Brazilian RJ Court. Supporting Factual Decl. at ¶ 20. The Brazilian RJ Debtors sought to restructure approximately BRL $65 billion *257 in third-party debt, which constituted the largest restructuring case in Brazil's history. Id. Ojas N. Shah was initially appointed as the foreign representative for the Brazilian RJ Proceeding with respect to of the Chapter 15 Debtors. Id.
The third-party indebtedness of the Oi Group that is subject to the Brazilian RJ Proceeding consists generally of four types of debt: (i) unsecured export credit facilities guaranteed or insured by export credit agencies or other quasi-governmental financial institutions; (ii) unsecured bonds and like securities issued, varyingly, under New York law, English law, and Brazilian law; (iii) two series of securities issued through Brazilian financial institutions, which consist of interests in lease payments owed by certain of the Brazilian RJ Debtors for the use of real property leased from other Brazilian RJ Debtors; and (iv) secured and unsecured bilateral and syndicated Brazilian bank debt. Id. at ¶ 9. Because the Oi Group is financially integrated, certain of the group's entities engage in intercompany borrowing and lending. Id. at ¶ 10. As a result, certain of the Brazilian RJ Debtors owe intercompany debt, which is subject to restructuring under the Brazilian RJ Plan. Id.
B. Proceedings in this Court
On June 21, 2016, the day after commencing the Brazilian RJ Proceeding, Mr. Shah-on behalf of each of the Chapter 15 Debtors-petitioned for commencement of these Chapter 15 proceedings seeking recognition of the Brazilian RJ Proceeding as the foreign main proceeding of each of the Chapter 15 Debtors [ECF Nos. 7, 8]. On July 22, 2016, this Court entered the Order Granting Recognition of Foreign Main Proceeding and Certain Related Relief [ECF No. 38], holding, among other things, that the center of main interests of each of the Chapter 15 Debtors is in Rio de Janeiro, Brazil, and recognizing the Brazilian RJ Proceeding as the foreign main proceeding of the Chapter 15 Debtors.
On July 18, 2017, consistent with an order of the Brazilian RJ Court and pursuant to a resolution of the board of directors for each of the Chapter 15 Debtors, the Chapter 15 Debtors simultaneously (i) revoked the appointment of Mr. Shah as foreign representative of its Brazilian RJ Proceeding in the United States and his related power-of-attorney, and (ii) appointed Antonio Reinaldo Rabelo Filho as foreign representative (the "Foreign Representative") in the United States for its Brazilian RJ Proceeding and granted him a power-of-attorney to act as such. See Disclosure Pursuant to 11 U.S.C. § 1518 Regarding Substitution of Foreign Representative ¶ 6 [ECF No. 79]. Thus, Mr. Rabelo replaced Mr. Shah as the foreign representative of the Brazilian RJ Proceeding for each of the Chapter 15 Debtors. Supporting Factual Decl. at ¶ 107.
On July 7, 2017, Mr. Berkenbosch commenced a Chapter 15 proceeding in this Court-Case No. 17-11888-requesting that this Court terminate its prior order recognizing the Brazilian RJ Proceeding as a foreign main proceeding for Chapter 15 Debtor Coop and instead recognize Coop's Dutch bankruptcy proceeding as its foreign main proceeding. [ECF No. 69]. Both Mr. Rabelo and the Steering Committee filed objections to this request. [ECF Nos. 105, 108]. Mr. Berkenbosch and the IBC filed replies to these objections. [ECF Nos. 123, 124]. After extensive litigation-including a trial-this Court issued a memorandum decision denying recognition of the Dutch petition and declining to modify or terminate its prior recognition of the Brazilian RJ Proceeding as the foreign main proceeding for Coop. The issues in that litigation were *258 complex and will not be discussed in depth here in the interest of brevity. But they are set forth in detail in two written decisions: See In re Oi Brasil Holdings Cooperati e f U . A . , 578 B.R. 169 (Bankr. S.D.N.Y. 2017) and 582 B.R. 358 (Bankr. S.D.N.Y. 2018) (denying request for partial reconsideration of that decision). Of note, however, is that the warring parties in that litigation stand united today in support of the Foreign Representative's motion to grant comity to the Brazilian RJ Plan and for related relief.
C. Events in the Brazilian RJ Proceeding
Since the filing of the Brazilian RJ Proceeding, the Brazilian RJ Debtors have negotiated with stakeholders through the course of a highly contentious, year-and-a-half long, multijurisdictional restructuring process. Supporting Factual Decl. at ¶ 25. These discussions ultimately led to the consensual approval and subsequent confirmation of the Brazilian RJ Plan in Brazil. Id.
Several bondholder groups actively participated in the restructuring process, including through litigation in the Brazilian courts. Supporting Factual Decl. at ¶ 26. For instance, both the Steering Committee, as well as the IBC, filed pleadings with and requested relief from the Brazilian RJ Court throughout the Brazilian RJ Proceeding. Id. Creditors of Coop and PTIF, two entities of particular contention in the process, also participated extensively. Specifically, creditors Syzygy Capital Management, LTD. and Capricorn Capital Ltd.-funds managed by Aurelius Capital Management, LP-both filed pleadings with and requested relief from the Brazilian RJ Court. Post-Trial Memorandum of Decision [ECF No. 174] at 17.
The first draft of the Brazilian RJ Plan was filed on September 5, 2016, in compliance with the timeline required under the Brazilian bankruptcy law. Supporting Factual Decl. ¶ 27. Both prior and subsequent to this filing, company management attended in-person meetings in New York and Brazil with various parties-in-interest, including the Oi Group's Brazilian bank creditors, the Brazilian telecommunications regulator Agência Nacional de Telecomunicações ("ANATEL"), lenders under the Oi Group's export credit facilities, and representatives of bondholder groups, such as the Steering Committee, members of the IBC, and other significant holders of the notes issued by Oi, Coop and PTIF. Seventh Statement Notifying the Court of the Status of the Restructuring (the "Seventh Declaration") [ECF No. 201] at ¶ 3.
On March 28, 2017, the Brazilian RJ Debtors filed its first series of proposed modifications to the Brazilian RJ Plan, on the basis of requests made by parties during negotiations. Supporting Factual Decl. at ¶ 29. Further modifications were considered in the following months, and a revised version of the Brazilian RJ Plan was filed on October 11, 2017. Id. On numerous occasions during October, November and December of 2017-prior to the filing of the final version of the Brazilian RJ Plan-representatives from certain creditors met with the company and its financial and legal advisors to discuss additional modifications. Id. at ¶ 30.
On November 27, 2017, the company filed a new version of the Brazilian RJ Plan along with a modified draft term sheet that incorporated feedback from discussions with various stakeholders, including ANATEL, Caixa Econômica Federal, Itaú Unibanco, and Banco do Brasil. Seventh Declaration at ¶ 4. These modified terms went on to become the material economic terms of the final Brazilian RJ Plan. Id. The Company also came to an agreement with the IBC and the Steering *259 Committee on the material economic terms of a new equity capital infusion to follow implementation of the Brazilian RJ Plan and the backstop of that offering by certain bondholders. See, e.g. , Supporting Factual Decl. ¶¶ 27, 31.
While the Brazilian RJ Plan was being revised, other events were taking place. Notice of the filing of the first draft of the Brazilian RJ Plan was published on September 30, 2016, after which creditors of the Brazilian RJ Debtors had 30 business days to file objections to the Brazilian RJ Plan. Supporting Factual Decl. at ¶ 28. Following the filing of various objections, the Brazilian RJ Court set the General Meeting of Creditors (the "GCM") on approval of the Brazilian RJ Plan for October 9, 2017 on first call and, if necessary, October 23, 2017 on second call. Id. The Brazilian RJ Court postponed the GCM several times, with final dates set for December 19 and 20, 2017 on first call and, if necessary, February 1 and 2, 2018 on second call. Id.
In anticipation of this pending creditor vote, on November 16, 2017, the Brazilian RJ Court entered a decision that revoked the power to participate in the restructuring process of those it found to be conflicted members of Oi's executive officers that had been appointed by Oi's board of directors (i.e., members nominated or appointed by certain of Oi's shareholders). Seventh Declaration at ¶ 5. In that decision, the Brazilian RJ Court also vested sole authority over the restructuring process with Oi's chief executive officer and directed him to present the final Brazilian RJ Plan no later than December 12, 2017. Id.
Following this decision, the Brazilian RJ Debtors filed a new version of the Brazilian RJ Plan on December 12, 2017. Supporting Factual Decl. at ¶ 31. The GCM was then held on December 19 and 20, 2017. Id. During the course of the GCM, the Brazilian RJ Plan was further modified with input from voting parties, and consolidated into a final version dated December 20, 2017. Id. This was the version approved by the creditors and ultimately confirmed, with certain modifications, by the Brazilian RJ Court. Id.
Under Brazilian bankruptcy law, the GCM could only be assembled on first call if attended by creditors, or their valid representatives, that held more than 50% of the value of total allowed claims in each of the Brazilian RJ Debtors' four creditor classes: labor-related claims ("Class I"); secured claims ("Class II"); unsecured claims, statutorily or generally privileged claims, and subordinated claims ("Class III"); and claims held by "small companies" under Brazilian law ("Class IV"). Declaration of Sérgio Ricardo Savi Ferreira in Support of the Motion for Order Granting Relief to (I) Enforce the Brazilian Reorganization Plan and (II) Grant Related Relief (the "Supporting Legal Declaration") [ECF No. 231] ¶¶ 29, 32. Attendance at the GCM easily met this quorum requirement, with the following percentages by value of claims in attendance: 92.28% of Class I, 100% of Class II, 98.57% of Class III, and 59.04% of Class IV. Supporting Factual Declaration, Exhibit C at 5-6. Indeed, the GCM was of unprecedented size, drawing participation from over 36,000 creditors, in what the Brazilian RJ Court described as, "numbers never before seen in a Brazilian judicial reorganization proceeding." Supporting Factual Decl., Exhibit C at II.
Creditors in attendance or represented at the GCM had the option of voting for, against, or abstaining from voting on, the Brazilian RJ Plan. Supporting Legal Decl. at ¶ 29; Supporting Factual Decl. at ¶ 48. But prior to voting on approval of the Brazilian RJ Plan itself, creditors voted on *260 whether they wanted the Brazilian RJ Plan to proceed on the terms of a consolidation of the Brazilian RJ Debtors. Supporting Factual Decl. at ¶ 49. Since the Oi Group is economically interconnected through related intercompany agreements, guarantees, and obligations, and because managerial, administrative, and financial decisions are made by Oi for the benefit of the entire Oi Group, the Brazilian RJ Plan is based on the consolidation of the assets and liabilities of all the Brazilian RJ Debtors. Id. at ¶ 49. Consolidation was for voting and distribution purposes only and the Brazilian RJ Plan does not cause the corporate consolidation or merger of the Brazilian RJ Debtors. Id. This consolidation was overwhelmingly approved by the creditors of the Brazilian RJ Debtors at the GCM, with the following percentages by value of claims approving: 99.5% of Oi claim holders, 96.87% of Móvel claim holders, 99.88% of Telemar claim holders, 97.68% of Coop claim holders, 99.09% of PTIF claim holders and 100% of Copart 4 and Copart 5 claim holders. See Minutes of the GCM at 5-6, attached as Exhibit F to the Supporting Factual Decl.
Following the vote approving consolidation, the creditors of the Brazilian RJ Debtors voted on approval of the Brazilian RJ Plan on a consolidated basis. Supporting Factual Decl. at ¶ 53. The Brazilian RJ Plan was voted on and approved in overwhelming numbers in every class at a GCM that was also attended by a record number of creditors. See Order Confirming Brazilian RJ Plan (the "Brazilian Confirmation Order") [ECF No. 230-3] at 5-6, attached as Exhibit C to the Supporting Factual Decl. Specifically, when considered by number of claim holders per class, the following percentages voted for approval of the Brazilian RJ Plan: 100% of the claim holders in Classes I and II, 99.56% of claim holders in Class III, and 99.8% of claim holders in Class IV. Supporting Factual Decl. at ¶ 53.
On January 8, 2018, the Brazilian RJ Court entered the Brazilian Confirmation Order ratifying and confirming the Brazilian RJ Plan, but modified certain provisions relating to the reimbursement of creditors' advisor fees and the eligibility of bondholders to participate as backstop investors under the contemplated backstop agreement. See Brazilian Confirmation Order at 9, attached as Exhibit C to the Supporting Factual Decl. The Brazilian Confirmation Order was published on February 5, 2018. Supporting Factual Decl. at ¶ 56. Under Brazilian law, a creditor has five business days from the publication of a confirmation order to file a motion for clarification, and, within fifteen business days after a decision on such motion is published, may file another motion for clarification or an interlocutory appeal of the same. Supporting Legal Decl. at ¶ 43.
Several motions for clarification and interlocutory appeals have been filed with respect to the Brazilian Conformation Order. Supporting Factual Decl. at ¶ 57. Although still subject to certain pending appeals, the Brazilian Confirmation Order and Brazilian RJ Plan have not been stayed, either fully or partially, and therefore remain in full force and effect, according to their terms, as of the date that the Foreign Representative's Motion was filed with this Court. Supporting Legal Decl. at ¶ 44; Supporting Factual Decl. at ¶ 57. A stay was sought by the Pharol Parties, among others, but was denied. See Decl. of Giuliano Colombo in Support of Steering Committee's Reply at ¶¶ 13-15, 17 (the "Colombo Declaration") [ECF No. 258]. The Brazilian Confirmation Order, according to its terms, is binding on all parties as long as its effects are not stayed. Supporting Legal Decl. at ¶ 44; Supporting Factual Decl. ¶ 60.
*261 On January 9, 2018, Oi shareholder Pharol and its subsidiary Bratel, issued a statement that it was requesting a "partial reconsideration" of the Brazilian Confirmation Order (the "Partial Reconsideration Request") and calling for an extraordinary shareholders meeting (the "Extraordinary Meeting") to deliberate the terms of the Brazilian RJ Plan, among other issues. Supporting Factual Decl. at ¶ 118. The Brazilian RJ Court rejected the Partial Reconsideration Request, including the request for the Extraordinary Meeting. Id. Despite this, the Extraordinary Meeting was held and attended by a number of shareholders, including Pharol and Bratel. Id.
On February 13, 2018, the state public prosecutor filed a request with the Brazilian RJ Court to suspend the rights of the shareholders who attended and signed the minutes of the Extraordinary Meeting and that those shareholders be removed from their positions for at least two years starting from the granting of the judicial reorganization. Id . On March 7, 2018, the Brazilian RJ Court granted the prosecutor's request and issued a decision that suspended the "political rights" of those shareholders who voted at the Extraordinary Meeting and removed the members of the Board who were appointed by such shareholders, until the new equity contemplated by the Brazilian RJ Plan has been issued to creditors. Id. at ¶ 119.
Bratel has taken several appeals from decisions issued by the Brazilian RJ Court, including, but not limited to, an appeal of the Brazilian RJ Court's order revoking the power of the allegedly conflicted members of Oi's executive officers and the Brazilian RJ Court's order vesting authority over the restructuring process in Oi's CEO. See Objection at 5-7. Bratel has also appealed the Brazilian Confirmation Order, and that appeal remains pending. Objection at ¶ 5. In its appeal of the Brazilian Confirmation Order, Bratel asserts that the Brazilian RJ Court lacked jurisdiction to rule that a shareholders' meeting is unnecessary and that the shareholder rights provided for under Brazilian corporate law are not eliminated or superseded by Brazilian insolvency law, and therefore confirmation of the Brazilian RJ Plan without shareholder involvement or participation violated their rights. Objection at ¶ 5.
The Pharol Parties are still actively pursuing their rights in the various proceedings in Brazil, including Bratel's appeals of the various decisions made by the Brazilian RJ Court and other Brazilian courts, as well as Bratel's pursuit of its interests as equity holders in both the mediation and the arbitration pending in Brazil.
D. Conditions Subsequent in the Brazilian RJ Plan
The Brazilian RJ Plan sets forth the following conditions subsequent: (1) the restructuring of certain bondholder credits under the Brazilian RJ Plan shall take place by July 31, 2018; (2) a contemplated capital increase shall occur by no later than July 31, 2018, and (3) the contemplated rights offering shall occur no later than February 28, 2019. Supporting Factual Decl., Exhibit A at § 12.1. The Brazilian RJ Plan provides that the relevant creditors may approve a waiver or modification of a condition subsequent, by resolution of the holder of a simple majority of claims present and voting at a meeting called for the purpose of waiving or modifying the condition(s) subsequent described above. Id. at § 12.2. Absent a waiver by the procedure set forth in the Brazilian RJ Plan, failure of any condition subsequent that is not waived may result in the termination of the Brazilian RJ Plan, at the discretion of the Brazilian RJ Court following consultation *262 with the judicial administrator and public prosecutors. Id. at ¶ 83.
E. The Brazilian Arbitration
At some point, Bratel commenced an arbitration against Oi, pursuant to an arbitration clause in Section 68 of Oi's bylaws. Objection at ¶ 6. The arbitration was commenced to, among other things, call a shareholders meeting to discuss the terms of the Brazilian RJ Plan affecting shareholders (i.e., dilution, capital increases and corporate governance issues), issues on which shareholders contend they have a right under Brazilian corporate law to appear and be heard and to prevent Oi from implementing the terms of the Brazilian RJ Plan that the Pharol Parties assert violate shareholders' rights. Objection at ¶ 6.
Oi initiated a proceeding before the Superior Court of Justice to determine which entity-the Brazilian RJ Court or the arbitrator-has jurisdiction over these issues. Objection at 8. Oi objected to the arbitration on the basis that only the Brazilian RJ Court has jurisdiction, and Bratel argued in response that there was no legal basis to transfer jurisdiction from the arbitrator to the Brazilian RJ Court. Objection at ¶ 6. This jurisdictional question is currently pending decision. Objection at ¶ 6.
Bratel sought a preliminary injunction in the arbitration. In a decision on March 5, 2018, the arbitrator issued an order that, among other things, (i) recognized arbitral jurisdiction to consider the issues raised by Bratel; (ii) suspended the effects of possible approval of any resolution resulting from the meeting of Oi's Board of Directors on March 5, 2018, in which the Board deliberated on the capital increase, debt exchange, issuance of new shares and subscription bonus contemplated under the Brazilian RJ Plan. Objection at 8. The arbitrator's decision precluded Oi from implementing the capital increase, subject to a monetary penalty. Id.
However, the Superior Court of Justice granted a preliminary injunction at Oi's request, staying the effects of the decision rendered by the arbitrator. Objection at 8-9. The Superior Court of Justice also appointed the Brazilian RJ Court to decide any other preliminary injunction requests. Objection at 9. Bratel has filed an appeal of this injunction, which is currently pending. Id. It is the Pharol Parties' position that the arbitrator's decision is stayed only as to the penalty, and that therefore under the arbitrator's decision Oi may not proceed with the implementation of the capital increase. Objection at 9.
F. The Brazilian Mediation
In addition to the arbitration, on April 2, 2018, the Brazilian RJ Court ordered Oi and shareholders Bratel and Société Mondiale to participate in mediation in an effort to resolve their disputes. Objection at ¶ 7. Rejecting Oi's effort to exclude Société Mondiale from the mediation, the Brazilian RJ Court issued its decision on April 18, 2018, approving Société Mondiale's participation and ordering mediation to proceed. Id. A mediator has been appointed, and substantive meetings were scheduled throughout the remainder of May. All parties to the mediation, including Oi, were to participate in a joint mediation conference during the week of May 21, 2018. Objection at ¶ 8.
G. Ancillary Proceedings
In addition to all of the various proceedings in Brazil, certain of the Brazilian RJ Debtors are subject to ancillary and other plenary restructuring proceedings in various countries. Supporting Factual Decl. at ¶ 108. In addition to this U.S. Chapter 15 proceeding, these include the previously discussed Dutch insolvency proceeding, an *263 English insolvency proceeding and a Portuguese insolvency proceeding. The Court will provide only a short description of each of these proceedings, all of which are referenced in more detail in the parties' submissions.
As to the Dutch insolvency proceeding, Coop and PTIF on April 10, 2018-that is, after entry of the Brazilian Confirmation Order-offered composition plans to their unsecured creditors as part of their Dutch bankruptcy proceedings. Id. The voting deadline for the Coop Dutch composition plan was May 15, 2018, and the voting deadline for the PTIF Dutch composition plan was April 30, 2018. Id. The Dutch composition plans are consistent in all material respects with the terms of the Brazilian RJ Plan that was already approved by stakeholders. Id. At a verification meeting held on June 1, 2018 in the Netherlands, Coop's creditors voted in favor of its Dutch composition plan. See Insolvency Trustee's Statement on the Dutch Proceedings at 2 [ECF No. 271]. With this approval by creditors, the Dutch court is now set to consider the Dutch composition plans for approval at a further hearing, which will take place between eight and fourteen days following the already completed verification meeting. Supporting Factual Decl. at ¶ 108.
As for the English recognition proceedings, the High Court of England and Wales issued orders on June 23, 2017 with respect to Oi, Móvel, and Telemar recognizing the Brazilian RJ Proceeding as a "foreign main proceeding" in the proceedings opened under the Cross-Border Insolvency Regulations 2006, which implements the Model Law in Great Britain. See First 1518 Declaration [ECF No. 32] at ¶ 10.
As to the Portuguese recognition proceeding, Oi and Telemar petitioned the Judicial Court of the Region of Lisbon on November 18, 2016 to recognize the Brazilian RJ Proceeding in relation to Oi and Telemar. Supporting Factual Decl. at ¶ 117. On July 11, 2017, that request was extended to Móvel as well. Id. The Portuguese court granted the petitions with respect to Oi and Telemar on March 6, 2017, and with respect to Móvel on August 11, 2017. Id.
DISCUSSION
A. Legal Standard:
The stated purpose of Chapter 15 is to "incorporate the Model Law on Cross-Border Insolvency so as to provide effective mechanisms for dealing with cases of cross-border insolvency." 11 U.S.C. § 1501(a). Section 1501(a) provides that Chapter 15 is intended to serve the following objectives:
(1) cooperation between-
(A) courts of the United States, United States trustees, trustees, examiners, debtors, and debtors in possession; and
(B) the courts and other competent authorities of foreign countries involved in cross-border insolvency cases;
(2) greater legal certainty for trade and investment;
(3) fair and efficient administration of cross-border insolvencies that protects the interests of all creditors, and other interested entities, including the debtor;
(4) protection and maximization of the value of the debtor's assets; and
(5) facilitation of the rescue of financially troubled businesses, thereby *264 protecting investment and preserving employment.
11 U.S.C. § 1501(a).
"Chapter 15 ... provides courts with broad, flexible rules to fashion relief that is appropriate to effectuate the objectives of the chapter in accordance with comity." In re Rede Energia S.A. , 515 B.R. 69, 91 (Bankr. S.D.N.Y. 2014) (citing In re Bear Stearns High-Grade Structured Credit Strategies Master Fund, Ltd., 389 B.R. 325, 333-34 (S.D.N.Y.2008) ; In re SPhinX, Ltd., 351 B.R. 103, 112 (Bankr.S.D.N.Y.2006) (Chapter 15 maintains-and in some respects enhances-the 'maximum flexibility' ... that former Section 304 provided bankruptcy courts in handling ancillary cases in light of principles of international comity and respect for the laws and judgments of other nations) (citations omitted), aff'd, 371 B.R. 10 (S.D.N.Y.2007) ). The importance of comity and international cooperation is reflected throughout Chapter 15. As the House Judiciary Committee stated in its report, "comity is raised to the introductory language to make clear that it is the central concept to be addressed." H.R. Rep. No. 109-31, pt. 1, at 109 (2005), as reprinted in 2005 U.S.C.C.A.N. 88, 172; see also 11 U.S.C. § 1509(b)(2)-(3) (providing that once recognition is granted in the United States, the foreign representative may apply directly to a court in the United States for appropriate relief in that court and a court in the United States shall grant comity to the foreign representative); 11 U.S.C. § 1525(a) (providing that, consistent with Section 1501, the court shall cooperate to the maximum extent possible with a foreign court or a foreign representative, either directly or through the trustee); Canada S. Ry. Co. v. Gebhard , 109 U.S. 527, 539, 3 S.Ct. 363, 27 L.Ed. 1020 (1883) ("[T]he true spirit of international comity requires that schemes of this character, legalized at home, should be recognized in other countries.").
The Foreign Representative here requests that this Court grant comity in the United States to the Brazilian RJ Plan and the order of the Brazilian RJ Court confirming the Brazilian RJ Plan. "Federal courts generally extend comity whenever the foreign court had proper jurisdiction and enforcement does not prejudice the rights of United States citizens or violate domestic public policy." See Victrix S.S. Co., v. Salen Dry Cargo A.B. , 825 F.2d 709, 713 (2d Cir. 1987) (citing Hilton v. Guyot , 159 U.S. 113, 202-03, 16 S.Ct. 139, 40 L.Ed. 95 (1895) ); see also Cunard S.S. Co. v. Salen Reefer Servs. A.B. , 773 F.2d 452, 456-57 (2d Cir. 1985) ; In re Atlas Shipping A/S , 404 B.R. 726, 733 (Bankr. S.D.N.Y. 2009). "American courts have long recognized the need to extend comity to foreign bankruptcy proceedings," because "[t]he equitable and orderly distribution of a debtor's property requires assembling all claims against the limited assets in a single proceeding; if all creditors could not be bound, a plan of reorganization would fail." Victrix , 825 F.2d at 713-14 ; see also Finanz AG Zurich v. Banco Economico S.A. , 192 F.3d 240, 246 (2d. Cir. 1999) ; In re Maxwell Commc'n Corp. , 93 F.3d 1036, 1048 (2d Cir. 1996) ; Salen Reefer , 773 F.2d at 458 ; OUI Fin. LLC v. Dellar , 2013 WL 5568732, at *5 (S.D.N.Y Oct. 9, 2013).
The burden rests on the Foreign Representative to demonstrate that he is entitled to the requested relief. See, e.g. , In re Sivec SRL, as successor in liquidation to Sirz SRL , 476 B.R. 310, 323 ( Bankr. E.D. Okla. 2012) ("The burden of proof is on the party urging comity.") (citing Reserve Intern. Liquidity Fund, Ltd. v. Caxton Intern. Ltd. , 2010 WL 1779282 at *13 (S.D.N.Y. Apr. 29, 2010) ;
*265 CSL Australia Pty. Ltd. v. Britannia Bulkers PLC , No. 08-8290, 2009 WL 2876250 at *3 (S.D.N.Y. Sept. 8, 2009) ("The burden of establishing international comity rests on the party asserting it.") (citation omitted); see also Fox v. Bank Mandiri (In re Perry H. Koplik & Sons, Inc.) , 357 B.R. 231, 239 (Bankr. S.D.N.Y. 2006) (noting that "the moving party carries the burden of proving that comity is appropriate") (citation omitted).
Two sections of the Bankruptcy Code, Sections 1521(a) and 1507, are relevant to the Court's analysis. "It is evident that recognition assistance of the types available under [these] sections is 'largely discretionary and turns on subjective factors that embody principles of comity.' " In re Rede , 515 B.R. at 91 (quoting In re Toft , 453 B.R. 186, 190 (Bankr. S.D.N.Y. 2011) ; see also In re Bear Stearns , 389 B.R. at 333. The determination of whether to enforce a plan confirmed in a foreign proceeding should be made on a case-by-case basis. See In re Treco , 240 F.3d 148, 156 (2d Cir. 2001) (stating with respect to former Section 304 that "[a]lthough some of the considerations in determining whether to defer to a certain country's bankruptcy proceedings may be constant from case to case, other factors vary."); In re Bd. of Directors of Telecom Argentina, S.A. , 528 F.3d 162, 174 (2d Cir. 2008) (making ruling under former Section 304 "based on the specific facts of this case and in light of all the circumstances") (citing In re Treco , 240 F.3d at 156 ); In re Garcia Avila , 296 B.R. 95, 107-08 (Bankr. S.D.N.Y. 2003) (in making determination under former Section 304, stating that "court must apply the factors on a case-by-case basis. Accordingly, a prior decision to defer to a particular foreign court in one case is not determinative in different case.") (citing In re Treco , 240 F.3d at 154, 156 ).
1. Section 1521(a)
Section 1521(a) of the Bankruptcy Code provides that "[u]pon recognition of a foreign proceeding, ... where necessary to effectuate the purpose of this chapter and to protect the assets of the debtor or the interests of the creditors, the court may, at the request of the foreign representative, grant any appropriate relief...." 11 U.S.C. § 1521(a). Such "appropriate relief" includes a non-exhaustive list of certain types of relief that is enumerated by the statute, including "any additional relief that may be available to a trustee, except for relief available under sections 522, 544, 545, 547, 548, 550, and 724(a)." 11 U.S.C. § 1521(a)(7). Courts have found such "appropriate relief" to be the same type of relief that was previously available under Chapter 15's predecessor, Section 304 of the Bankruptcy Code. In re Vitro S.A.B. de C.V. , 701 F.3d 1031, 1054 (5th Cir. 2012). The Court may grant relief under Section 1521(a)"only if the interests of the creditors and other interested entities, including the debtor, are sufficiently protected." 11 U.S.C. § 1522(a). Courts have acknowledged that "the policy underlying section 1522 is that there should be 'a balance between relief that may be granted to the foreign representative and the interests of the person that may be affected by such relief.' " In re Rede , 515 B.R. at 90 (quoting In re Int'l Banking Corp. B.S.C. , 439 B.R. 614, 626 (Bankr.S.D.N.Y.2010) ); see also Jaffé v. Samsung Elecs. Co. , 737 F.3d 14, 27-28 (4th Cir. 2013) ("The analysis required by § 1522(a) is ... logically best done by balancing the respective interests based on the relative harms and benefits in light of the circumstances presented, thus inherently calling for application of a balancing test....").
2. Section 1507
Section 1507 of the Bankruptcy Code also permits the Court to grant post-recognition relief in the form of "additional assistance *266 to a foreign representative under this title or under other laws of the United States." 11 U.S.C. § 1507(a). Section 1507 provides that the Court, in its discretion, may grant the "additional assistance," only after balancing the various factors set forth in Section 1507(b). See 11 U.S.C. § 1507. In determining whether to provide such relief, a court
shall consider whether such additional assistance, consistent with the principles of comity, will reasonably assure-
(1) just treatment of all holders of claims against or interests in the debtor's property;
(2) protection of claim holders in the United States against prejudice and inconvenience in the processing of claims in such foreign proceeding;
(3) prevention of preferential or fraudulent dispositions of property of the debtor;
(4) distribution of proceeds of the debtor's property substantially in accordance with the order prescribed by this title; and
(5) if appropriate, the provision of an opportunity for a fresh start for the individual that such foreign proceeding concerns.
11 U.S.C. § 1507(b). Thus, the language of Section 1507(b) explicitly incorporates the principle of comity in a court's consideration of whether to grant additional assistance. See id.
B. Analysis Under Sections 1521 and 1507 of the Bankruptcy Code
In the Motion, the Chapter 15 Debtors rely on both Section 1521 and Section 1507. See Motion ¶¶ 121-122. The Pharol Parties appear to agree that these sections govern here. See Objection ¶¶ 14, 16-17. But the Pharol Parties disagree with the Chapter 15 Debtors as to whether the Court should exercise its discretion under these provisions to grant comity in the United States to the Brazilian RJ Plan-and related relief-while there are still proceedings pending in Brazil. See Objection ¶ 14. Applying the applicable legal principles to the facts of the case at hand, the Court finds that the Chapter 15 Debtors have satisfied the requirements for relief under both Section 1521 and 1507 and, therefore, will grant the Motion, notwithstanding the proceedings still pending in Brazil.
As to Section 1521, the Court finds that the relief requested by the Foreign Representative is "appropriate relief" under Section 1521(a)(7) because it is the type of relief that was available under former Section 304 and routinely granted under U.S. law. See In re Rede , 515 B.R. at 92-93 (finding that relief to enforce Brazilian plan is proper under Section 1521 ) (citing In re Vitro , 701 F.3d at 1054 ). For instance, the Foreign Representative requests that this Court give full force and effect and grant comity in the United States to the Brazilian RJ Plan, including enjoining acts in the United States that would interfere with the Brazilian RJ Plan or the Brazilian Confirmation Order. See Foreign Representative Motion for Order Granting Relief to Enforce the Brazilian Reorganization Plan [ECF No. 232] at 59-62. This is the type of relief that courts have previously granted under former Section 304 of the Bankruptcy Code and other applicable U.S. law. See In re Rede , 515 B.R. at 93 (citing Bd. of Dirs. of Telecom Arg., 528 F.3d at 174-76 ; In re Avila, 296 B.R. at 114-15 ; 11 U.S.C. § 1141(d)(1)(A) (granting discharge to Chapter 11 debtor upon confirmation except as otherwise provided for in the plan); 11 U.S.C. § 524(a) (describing the effect of a discharge) ). Similarly, the requests for instructions directing the Indenture Trustee to take certain actions with respect to securities in *267 accordance with the terms of the Brazilian RJ Plan, is also relief of a type available under U.S. law. See In re Rede , 515 B.R. at 93 (citing 11 U.S.C. § 1142(b) (providing that a court "may direct ... any ... necessary party to execute or deliver or join in the execution or delivery of any instrument required to effect a transfer of property dealt with by a confirmed plan, and to perform any other act ... that is necessary for the consummation of the plan"); In re Washington Mut., Inc., 2012 WL 1563880 at *38 (Bankr. D. Del. Feb. 24, 2012) (directing indenture trustee to make distributions in order to effectuate plan transactions) ).
Moreover, the Court finds that it is appropriate to exercise its discretion under Section 1521 to grant comity to the Brazilian RJ Plan. That plan is the culmination and ultimate resolution of the extensive Brazilian RJ Proceeding that was already granted recognition by this Court. It is impossible for the Brazilian RJ Plan to be fully consummated without granting recognition given the conditions subsequent in the plan. These conditions subsequent include, among other things, the issuance of U.S. securities, which cannot take place without an order granting the relief requested by the foreign representative. Granting the Foreign Representative's Motion is, therefore, essential to implementation of the restructuring and complete distributions and therefore consummation of the Brazilian RJ Plan. In granting the requested relief, the Court notes that the Brazilian RJ Plan is overwhelmingly supported by the stakeholders in the case, and that all stakeholders have had the opportunity to be heard in the Brazilian RJ Proceeding and to protect their rights under Brazilian law. As to the Pharol Parties, this is amply demonstrated by the extensive proceedings involving them in Brazil, including Bratel's appeals of decisions of the Brazilian RJ Court, as well as the existence of the arbitration and mediation in Brazil.
In addition, the Court also concludes that the relief requested by the Foreign Representative here properly constitutes "additional assistance" pursuant to Section 1507 of the Bankruptcy Code. Specifically, the relief requested by the Foreign Administrator meets each of the factors in Section 1507.
The first factor of Section 1507(b) examines whether the additional assistance will reasonably assure "just treatment of all holders of claims against or interests in the debtor's property." 11 U.S.C. § 1507(b)(1). Case law relating to former Section 304(c) found this requirement to be satisfied where the foreign insolvency law provides a comprehensive procedure for the orderly resolution of claims and the equitable distribution of assets among all of the estate's creditors in one proceeding. See, e.g., In re Treco , 240 F.3d at 158 ; In re Culmer , 25 B.R. 621, 629 (Bankr. S.D.N.Y. 1982). As described in greater detail in the Supporting Legal Declaration, Brazilian bankruptcy law provides such a comprehensive procedure, while at the same time maintaining the company's business and activities. Supporting Legal Decl. at ¶¶ 4-5, 15. Consensual approval of a plan under Brazilian law requires votes from a specified majority of each class of claims. Id. at ¶ 33. This requirement has been met because all classes under the Brazilian RJ Plan voted overwhelmingly in its favor.
Brazilian bankruptcy law also provides additional creditor protections that justify granting comity in these circumstances. For instance, under Brazilian bankruptcy law creditors have the right to object to a plan within 30 business days after notice of its publication. Id. at ¶ 23. Creditors may *268 also oppose a plan and propose amendments thereto during the GCM, up until a final approval by creditors. Id. at ¶ 27. Additionally, within five days of publication of a confirmation order, creditors may file a motion for clarification, and, within fifteen days of its publication, creditors may file an interlocutory appeal to the appellate court. Id. at ¶ 43. Creditors are also given notice of decisions made by the Brazilian RJ Court, with the deadlines for filing appeals commencing from the date on which creditors are notified of such decision by means of a publication. Id. A judicially appointed administrator also provides additional oversight of the process, ensuring that accurate information is distributed to the creditors and informing the Brazilian RJ Court if a debtor fails to meet its obligations under a confirmed plan or commits an act that violates the Brazilian bankruptcy law. Id. at ¶ 15-17, 39.
The second factor in favor of granting comity under Section 1507 requires that the additional assistance reasonably assure "protection of claim holders in the United States against prejudice and inconvenience in the processing of claims in such foreign proceeding." 11 U.S.C. § 1507(b)(2). This factor is satisfied where, as here, creditors are given adequate notice of the timing and procedures for filing claims, and such procedures do not create additional burdens for a foreign creditor seeking to file a claim. See, e.g., Treco , 240 F.3d at 158 ; In re Hourani , 180 B.R. 58, 68 (Bankr. S.D.N.Y. 1995). Under Brazilian bankruptcy law, foreign creditors have the same status, the same rights and protections, and are subject to the same procedures, as local creditors with respect to the filing of claims. Supporting Legal Decl. at ¶ 12. Upon issuing the decision to accept a debtor's petition for judicial reorganization under Brazilian bankruptcy law, a Brazilian judge orders the publication of the decision along with a list of creditors presented by the debtor. Id. at ¶ 10. Within 15 business days from the publication of such list, the creditors may present their proofs of holdings or objections to such list. Id. After analyzing the proof of holdings and objections, the judicial administrator will publish a second creditors' list, to which all creditors, the debtors or the public prosecutor's office may present new objections within 10 business days of publication. Id. The Brazilian court then rules on any objections filed and orders the presentation of the final list of creditors and claims. Id.
The third factor in Section 1507(b) requires that the additional assistance requested reasonably assures "prevention of preferential or fraudulent dispositions of property of the debtor." 11 U.S.C. § 1507(b)(3). This factor is satisfied here given that-when a debtor is declared bankrupt under Brazilian law-any creditor, the Brazilian public attorney's office or the judicial administrator may bring an action to avoid transfers that were made to third parties with the intention to harm creditors or damage the debtor's estate. Id. at ¶ 19.
The fourth factor of Section 1507(b) requires that the additional assistance reasonably assures "distribution of proceeds of the debtor's property substantially in accordance with the order prescribed by" the Bankruptcy Code. 11 U.S.C. § 1507(b)(4) ; see also In re Gee , 53 B.R. 891, 904 (Bankr. S.D.N.Y. 1985) ; Haarhuis v. Kunnan Enters., Ltd. , 177 F.3d 1007 (D.C. Cir. 1999) (Taiwanese distribution system was substantially in accordance with U.S. law because priority afforded to certain classes of claims as under the Bankruptcy Code). This factor requires simply that the "foreign distribution scheme be 'substantially in accordance' with United States bankruptcy law;
*269 it does not have to mirror the United States distribution rules." In re Ionica , 241 B.R. 829, 836 (Bankr. S.D.N.Y. 1999) (citations omitted). This factor is satisfied here because the distribution scheme under Brazilian bankruptcy law substantially accords with the distribution scheme under the Bankruptcy Code. In a consensually approved Brazilian plan (without the use of "cram-down" provisions), for example, the claims of affected creditors are paid in accordance with the plan, which must be approved by all classes of creditors, including secured creditors and unsecured creditors. Supporting Legal Decl. at ¶¶ 27, 33. The Bankruptcy Code ensures that secured creditors receive priority over unsecured creditors, and under the Brazilian RJ Plan, secured creditors are entitled to payment in full. Additionally, Brazilian bankruptcy law provides "meaningful protections that are similar to the protections embodied in U.S. law," and the Brazilian RJ Plan's different treatment of certain unsecured creditors has a reasonable basis and was necessary to consummate the RJ Plan. See In re Rede , 515 B.R. at 97.
The Court also finds that granting comity to the Brazilian RJ Plan is appropriate because it ensures that the Brazilian RJ Plan will be implemented in a manner consistent with its terms and without unnecessary delay and costs.
In granting comity to the Brazilian RJ Plan and the Brazilian Confirmation Order, the Court notes that comity is most often withheld when the recognition of foreign proceedings would be adverse to the public policy interests of the United States. See 11 U.S.C. § 1506 ("Nothing in this chapter prevents the court from refusing to take an action governed by this chapter if the action would be manifestly contrary to the public policy of the United States."); see also Somportex, Ltd. v. Phila. Chewing Gum Corp. , 453 F.2d 435, 440 (3d Cir. 1971) ; Salen Reefer , 773 F.2d at 457 (citing Somportex , 453 F.2d at 440 ). But this and other courts have found that Brazilian bankruptcy law is consistent with U.S. policy and provides to creditors meaningful protections similar to those provided under U.S. law. See, e.g., In re Rede , 515 B.R. at 98 (rejecting argument that Brazilian bankruptcy proceedings there violated Section 1506 and concluding that "Brazilian bankruptcy law meets our fundamental standards of fairness and accords with the course of civilized jurisprudence."); In re OAS S.A. , 533 B.R. 83, 103 (Bankr. S.D.N.Y. 2015) (noting that "Brazil has a comprehensive bankruptcy law that in many ways mirrors our own" and agreeing with the Rede decision that Brazilian bankruptcy law is not contrary to U.S. public policy).[2]
For all these reasons, then, the Court finds that the Brazilian RJ Proceeding is not contrary or prejudicial to the interests of creditors in the United States and that the doctrine of comity supports the granting of permanent relief enforcing the Brazilian RJ Plan and the Brazilian Confirmation Order under Sections 1507 and 1521 of the Bankruptcy Code.[3]
C. Pharol Parties' Objection
The Court now turns to the specific arguments raised by the Pharol Parties.
*270 The Pharol Parties generally assert that granting the relief requested by the Foreign Representative would be inconsistent with the purposes of Chapter 15, and that the Court should instead delay granting any relief until after all of the proceedings in Brazil are completed, including the appeals, the arbitration and the mediation. See Objection at ¶ 13. This argument takes several forms.
As a threshold matter, the Pharol Parties suggest that the Foreign Representative is trying to rush these enforcement proceedings through the Court too quickly. But this is wrong on several levels. The Foreign Representative's Motion was scheduled on ordinary notice in this Court and all interested parties were given a chance to be heard. Moreover, the Brazilian RJ Plan was confirmed over four months prior to the hearing on the Motion and all parties in interest have had at least that much notice of the plan's milestones and timeline, which were expressly incorporated in the Brazilian RJ Plan. Even before that point, multiple creditor constituencies were involved in active negotiations with the Brazilian RJ Debtors for months about the mechanics of any plan. To suggest that the Chapter 15 Debtors are now seeking an expedited request here to somehow short-circuit the process in Brazil is a clear mischaracterization of the facts.
Additionally, the Pharol Parties provide no timeline for how long this Court should wait until deciding the Foreign Representative's Motion. See Objection at 21 (subsection caption stating that: "The Enforcement Motion should be adjourned until all appeals, arbitration and mediation proceedings have been exhausted in Brazil."). In the face of a complaint by the Chapter 15 Debtors about the lack of any temporal limits to the Pharol Parties' approach, the Pharol Parties suggested at the hearing on the Motion that the Court simply delay proceedings until a further status conference on June 18, 2018. See Hr'g Tr. 78:3-6, May 29, 2018 (counsel for the Pharol Parties suggesting that parties come back for a status conference on June 18th when they might have a clearer picture on unresolved issues). Such a timeline would be highly problematic, however, as this is only a few days' prior to the deadline for at least two of the conditions subsequent that require relief from this Court to implement. Moreover, this approach would effectively provide the very same stay pending appeal that the Pharol Parties sought and were denied by the Brazilian courts. It is not this Court's role to effectively second-guess or overrule the determinations made by the Brazilian courts, particularly under the guise of comity.
Perhaps to address these problems, the Pharol Parties suggest that the Chapter 15 Debtors call a meeting to allow creditors to vote on waiving the deadlines contained in the Brazilian RJ Plan. As a threshold matter, such an approach is exceedingly unlikely to offer a lasting solution here. See Hr'g Tr. 81:12-19, May 29, 2018 (counsel to the Foreign Representative noting that "to let all of the so-called unfinished business in Brazil play out" could take years). But it is also exceedingly unlikely to work. As counsel to the Steering Committee noted at the hearing on the Motion, such a meeting would be extremely difficult to convene due to the thousands of creditors involved in the case and, in any case, his own client is currently not prepared to extend or waive the deadlines in the Brazilian RJ Plan. See Hr'g Tr. 85:5-15, May 29, 2018. That is not surprising given that the Brazilian RJ Plan was approved only after a lengthy and highly contentious process, and the deadlines contained therein were heavily negotiated. See id. Against this backdrop, the possibility of getting all creditors to vote in favor of *271 delay-much less the extended delay sought by the Pharol Parties-is highly implausible. More importantly, it would be starkly at odds with comity for this Court to insert itself into the Brazilian process in such an intrusive way by effectively requiring the Brazilian RJ Debtors to convene another meeting of creditors. See SNP Boat Serv. S.A. v. Hotel Le St. James, 483 B.R. 776, 786 (S.D. Fla. 2012) ("To inquire into a specific foreign proceeding is not only inefficient and a waste of judicial resources, but more importantly, necessarily undermines the equitable and orderly distribution of a debtor's property by transforming a domestic court into a foreign appellate court where creditors are always afforded the proverbial 'second bite at the apple.' Chapter 15's directive that courts be guided by principles of comity was intended to avoid such a result.").
The Pharol Parties note that both Section 1521 and Section 1507 incorporate a balancing test, which they argue weighs in their favor. But these tests actually weigh against their position. As detailed above, the Brazilian RJ Debtors, various parties in interest and numerous creditor constituencies were involved in extensive negotiations regarding the terms of the Brazilian RJ Plan. These negotiations were ultimately successful, as the vast majority of creditors voted overwhelmingly in favor of the Brazilian RJ Plan. The Brazilian RJ Plan has been confirmed and such confirmation has not been stayed by the Brazilian courts. Numerous creditors have acted in reliance on the timely consummation of the transactions required by the Brazilian RJ Plan. Denying the relief requested by the Foreign Representative would work to the detriment of these vast creditor constituencies, instead serving only the parochial interests of the Pharol Parties. Indeed, three major creditor constituencies-the Steering Committee, the International Bondholder Committee and Solus-have all filed pleadings supporting the relief requested by the Foreign Representative. To grant the objection would essentially give the Pharol Parties-that do not even claim to speak for the interests of all shareholders-a pocket veto over the entire process, notwithstanding the wishes of the vast majority of stakeholders.
Relatedly, the Pharol Parties suggest that granting the Foreign Representative's request would "create[ ] a significant risk of legal and commercial uncertainty surrounding the outcome of the pending appeals in Brazil." Objection at ¶ 31. As a basis for this argument, the Pharol Parties posit that if it were to ultimately succeed in its appeals, the transactions that took place in the United States would have to be unwound. Id. But courts in this jurisdiction have granted plan enforcement orders despite the pendency of appeals in the foreign main proceeding. See In re Ocean Rig UDW Inc. , Case No. 17-10736 (MG) (Bankr. S.D.N.Y. Sept., 20, 2017) (granting full force and effect to scheme approved in Cayman Islands despite pending action by a creditor for a fraudulent transfer claim); In re Sino-Forest Corp. , 501 B.R. 655, 666 (Bankr. S.D.N.Y. 2013) (enforcing Canadian reorganization plan and settlement over objection of party pursuing appeals in Canada and stating that possible appeal in Canada was not a "reason to wait" and that "at least one additional ruling is required from the trial court in Canada, seeking approval of a plan of distribution, before the settlement can become final, so this Court's ruling does not provide the last word in any event."); In re Rede , 515 B.R. at 95 (balancing the foreign debtor's interests against those of objecting party and concluding that plan enforcement relief meets the requirements of Sections 1522(a) and 5121 of the Bankruptcy Code, and noting that party objecting to plan *272 enforcement relief "simply wants another chance to renegotiate the terms of the Brazilian Reorganization Plan," and that granting such relief "does not prevent the [objector] from continuing to assert its rights under Brazilian law in the pending appeals of the decisions of the Brazilian Bankruptcy Court."); In re Gerova Financial Group, Ltd. , 482 B.R. 86, 94 (Bankr. S.D.N.Y. 2012) (holding in context of recognition proceeding that nothing in statutory language of Chapter 15 required that a decision of a foreign court be final or non-appealable).
Moreover, the Court disagrees with the Pharol Parties' premise about uncertainty arising out of a grant of the Motion. In fact, failure to grant the Motion and implement the Brazilian RJ Plan by the deadlines provided would cause more uncertainty. It would seriously risk the failure of the restructuring under Brazilian law and create the possibility of a mandatory liquidation of the Oi Group. That is because the Brazilian RJ Debtors' proceeding may be converted to a bankruptcy liquidation proceeding known as a falido following the occurrence of certain events, one of which is the failure of the Brazilian RJ Debtors to comply with the terms of an approved and confirmed judicial reorganization plan. Supplemental Legal Decl. ¶ 13. Following conversion to such a proceeding, a debtor is declared not capable of reorganizing and the debtor's assets are placed into liquidation. Id. Thus, denial of the Motion would put at risk the entire global restructuring of the Brazilian RJ Debtors and their non-debtor affiliates.
Moreover, a delay in granting the Motion would adversely affect creditors that are holding over USD $20 billion in restructured debt, including over USD $5 billion in New York law-governed bonds that have already been novated by the Brazilian RJ Plan under Brazilian law, and are entitled under the plan to receive a distribution of new securities. Foreign Representative's Reply to Objection of Pharol at ¶ 5 [ECF No. 253]. Without a grant of the relief requested by the Foreign Representative, the Oi Group will be unable to successfully restructure its New York law-governed debt per the terms of the Brazilian RJ Plan. As explained above, the Brazilian RJ Plan has a timeline by which certain conditions subsequent must occur for the plan to become effective. The Brazilian RJ Plan provides that the non-occurrence of these events by July 31, 2018 results in termination of the plan. See Brazilian RJ Plan § 12.1, attached as Exhibit A to the Supporting Factual Declaration [ECF No. 230-1]. These conditions require, among other things, the issuance of U.S. securities, which cannot take place without this Court granting the relief requested by the Foreign Representative. Granting the Foreign Representative's Motion is, therefore, a prerequisite to implementation of the restructuring and complete distributions, and therefore consummation of the Brazilian RJ Plan. Importantly, the steps and timeline discussed above were incorporated in the Brazilian RJ Plan, which was subsequently approved by the Brazilian court in the Brazilian Confirmation Order. A delay in granting the relief requested could result in those parties having their claims discharged in Brazil, but not in the United States, which in turn could lead to the Chapter 15 Debtors facing lawsuits in the United States for debts that have already been discharged under Brazilian law. Foreign Representative's Reply to Objection of Pharol at ¶ 5. The equities therefore clearly weigh in favor of granting the relief that these creditors approved of through their votes in favor of the Brazilian RJ Plan.
A grant of the Motion now is also consistent with the notion that Chapter 15 affords *273 greater deference after the recognition of a foreign proceeding:
Once a case is recognized as a foreign main proceeding, [C]hapter 15 specifically contemplates that the court will exercise its discretion consistent with principles of comity. There is a logical reason for this. Deference to foreign insolvency proceedings will often facilitate the distribution of the debtor's assets in an equitable, orderly, efficient, and systematic manner, rather than in a haphazard, erratic, or piecemeal fashion. Chapter 15 mandate[s] that the court cooperate 'to the maximum extent possible' with a foreign court or representative ....
In re Atlas Shipping , 404 B.R. at 738-39 (internal citations and quotations omitted). As noted by the Foreign Representative, "the Chapter 15 Court's role is to assist the foreign insolvency proceeding, not to supervise it." Foreign Representative's Reply to Objection of Pharol at 2. This Court finds that, considering all the circumstances of this case, the issues of Brazilian law should be resolved by the Brazilian courts, including the question of whether the pending litigation in Brazil justifies a stay of the Brazilian RJ Plan.
Thus, if the Pharol Parties believe that pending proceedings in Brazil should prevent enforcement of the Brazilian RJ Plan, then the proper recourse would be to seek relief from the Brazilian courts in the form of a stay. But the Brazilian courts have denied such requests for a stay, knowing full well the consequences.[4] See Colombo Declaration at ¶¶ 13-15, 17, 20 (noting lack of stay effect of Brazilian court orders and affirmative denial of stays by Brazilian courts); Hr'g Tr. 12:13-17, May 29, 2018 (parties agree that there is no stay in place in Brazil); id. at 48:5-9 (Pharol Parties' counsel stating that they were unsuccessful in obtaining stay pending appeal in Brazil and that Brazilian arbitration and mediation do not implement a stay). Having failed to obtain such relief in Brazil, the Pharol Parties should not now indirectly be granted what they failed to obtain directly. "A U.S. bankruptcy court is not required to make an independent determination about the propriety of individual acts of a foreign court." In re Metcalfe & Mansfield Alternative Investments , 421 B.R. 685, 697 (Bankr. S.D.N.Y. 2010) ; see In re Fairfield Sentry Ltd. , 484 B.R. 615, 628 (Bankr. S.D.N.Y. 2013) ("Chapter 15 was not designed to permit parties to mix and match multiple countries' laws, which would lead to haphazard, erratic or piecemeal adjudication of the distribution of assets ... as the administration and disbursement of the same assets would be handled by different tribunals in different countries according to different laws ...."). It is simply not this Court's role to second guess the wisdom of the Brazilian courts or overrule their decisions, which would be fundamentally inconsistent with comity. See, e.g., SNP Boat Serv., 483 B.R. at 786 ; c.f. In re Rede , 515 B.R. at 100 (stating with respect to public policy exception of Section 1506 that "it is not appropriate for this Court to superimpose requirements of U.S. law on a case in Brazil or to second-guess the findings of the foreign court.").[5]
*274 The Pharol Parties try to distinguish the cases that grant relief similar to that being sought here-such as in the Rede and Gerova cases-by arguing that the Brazilian RJ Plan here has not yet been substantially consummated in Brazil, and that this Court would be the vehicle through which substantial consummation was achieved. But the Pharol Parties' attempt to distinguish these cases-particularly Rede -are unavailing. The principles of comity behind those decisions are very much at odds with the Pharol Parties' position. Indeed, other cases in this jurisdiction have enforced foreign orders approving plans before those plans have become effective. See, e.g., Bibby Offshore Services Plc , No. 17-13588 (MG) (Bankr. S.D.N.Y. Jan. 18, 2018) [ECF Nos. 2, 16] (recognizing, granting comity to, and entitling "full force and effect" to scheme of arrangement where the "Restructuring contemplated by the Scheme...which [would] only be implemented through the Scheme if the Noteholders vote[d] to approve the Scheme...and sanctioned by the English Court" was not yet carried out, with court stating that "[a]bsent the requested relief, the efforts of the Debtor, the English Court, and the Petitioner in conducting the UK Proceeding and effecting the Restructuring under the Scheme and English law may be thwarted by the actions of certain creditors, a result inimical to the purposes of chapter 15."); In re Odebrecht Óleo e Gas S.A. , No. 17-13130 (JLG) (Bankr. S.D.N.Y. Dec. 13, 2017) [ECF Nos. 4, 28] (giving full force and effect to "Brazilian Confirmation Order and the Brazilian Reorganization Plans" where Brazilian Reorganization Plans had not been consummated or effectuated, but petitioner was seeking assistance from the court "pertaining to the actions necessary to give effect to the terms of the Brazilian Reorganization Plans, including...exchange of the Existing Securities...in consideration for the issuance of the New Securities"); In re CGG S.A. , 579 B.R. 716, 720 (Bankr. S.D.N.Y. 2017) ("[E]nforcement of the Sanctioning Order is necessary to ensure that the Financial Restructuring contemplated by the Safeguard Plan and the confirmed Chapter 11 plan can be implemented."). Furthermore, the Pharol Parties' argument is counterintuitive, since the relief requested by the Foreign Representative is necessary for substantial consummation to take place in Brazil. The Chapter 15 Debtors assert that they would be in violation of U.S. securities law if they were to try to substantially consummate the Brazilian RJ Plan by making distributions of new securities to bondholders without obtaining prior relief from this Court.
The Pharol Parties also argue that the absence of the equitable mootness doctrine in Brazil should weigh against this Court granting relief.[6] But it is hard to see how this supports the Pharol Parties' position. The Brazilian courts are no doubt aware that this doctrine does not exist in Brazil and nonetheless decided to deny a stay of the order approving the Brazilian RJ Plan. Should the Pharol Parties prevail in their legal challenges, there are undoubtedly provisions in both Brazilian and U.S. law that will govern proceedings going forward in both countries and the scope of appropriate relief. In the event that the *275 Brazilian Confirmation Order is reversed on appeal, the Pharol Parties have acknowledged that they can seek relief in this Court including, but not limited to, relief under Rule 60(b)(5) of the Federal Rules of Civil Procedure. See Objection ¶ 22 n.16.; see also In re Oi Brasil Holdings Cooperatief , 578 B.R. at 203 ("Chapter 15 maintains, and in some respects enhances, the 'maximum flexibility' of bankruptcy courts in handling ancillary cases in light of principles of international comity and respect for the laws and judgments of other nations."); 11 U.S.C. § 1522 (bankruptcy court may "modify or terminate" relief it has previously granted); In re SPhinX , 351 B.R. at 112 ("This flexibility is evident not only in the policy statement in section 1501(a) but also in Bankruptcy Code section 1522, which provides that the Court may grant or modify interim ... or additional relief[.]"). Conversely, if this Court does not grant the Pharol Parties the delay that they request, there will be no change to the status quo in the Brazilian litigation and the Pharol Parties' rights in Brazil are unaffected.
Lastly, the Pharol Parties raised an issue at the hearing with respect to certain language contained in the Foreign Representative's proposed order relating to the Motion. This language provided that if the Brazilian RJ Plan were ever terminated under Brazilian law, then the order of this Court granting the relief requested by the Foreign Representative and all actions contemplated thereby would be, "null and void and of no force or effect." Blackline Against First Proposed Order at ¶ 16 [ECF No. 269-2]. The Pharol Parties suggested that this language would somehow differ from the ex tunc and void ab initio effect that the Pharol Parties believe would be appropriate under Brazilian law. The language in the proposed order, however, has been further revised to incorporate the Pharol Parties' concerns, and now additionally provides that in the event of a termination of the Brazilian RJ Plan, this Court's order would "be deemed void ab initio to the extent rendered as such under Brazilian law." Id. Moreover, as the Court stated at the hearing, the Pharol Parties can always return to this Court to protect their rights under U.S. law to the extent necessary, a fact the Pharol Parties recognize. See, e.g. , Objection at 20 n.16. For these reasons, therefore, the Court finds that any legitimate issues raised by the Pharol Parties as to the proposed order have been properly addressed.
CONCLUSION
For all these reasons, the Court grants the Motion and the relief requested by the Foreign Representative and overrules the Objection in its entirety.

In fact, the Pharol Parties have not argued that the relief requested here would violate the public policy interests of the United States.

The Court also finds that the other relief requested by the Foreign Representative is appropriate under the circumstances, including the requested injunctions, exculpations, and exemption relief under Section 1145 of the Bankruptcy Code. As this additional relief is not subject to a specific objection by the Pharol Parties, the Court will refrain from a detailed analysis as to each of these requests for relief.

The Pharol Parties complain that granting the relief now would frustrate processes overseas such as the mediation. See Objection at ¶ 23. But as the Brazilian courts that ordered the mediation also refused to grant a stay of the confirmation order, it is difficult to see how the existence of the mediation weighs in favor of the Pharol Parties.

Of course, the Court takes no position on the merits of the Pharol Parties' appeals or other proceedings in Brazil. Despite the Pharol Parties having attached no less than four legal opinions regarding Brazilian law to its papers, the parties here actually have agreed that these issues of Brazilian law are not for this Court to decide. See Objection at ¶ 21 n.14 (noting that the Pharol Parties offer the opinions not for the purpose of asking the Court to revisit the Brazilian Confirmation Order or to prejudge the outcome of the appeals, but rather to establish that the appeals are not frivolous).

The Objection appears to be inconsistent on the issue of equitable mootness. On the one hand, it complains that the relief sought here could render foreign appeals moot while, on the other hand, it states that Brazilian law does not recognize the doctrine of equitable mootness. See Objection at ¶¶ 19-20.